NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMILA DAVIS, | ) ) ) | Civil Action No.: 10-4964 (JLL) |
| Petitioner, | ) ) | **OPINION** |
| v. | ) ) |  |
| UNITED STATES OF AMERICA, | ) ) |  |
| Respondent. | ) ) |  |

**LINARES**, District Judge.

Currently before this Court is Petitioner Jamila Davis' (hereinafter referred to as "Petitioner") motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Respondent, the United States, submitted an Answer in response to the motion. The Court has considered the parties' submissions, and, for the reasons set forth below, denies Petitioner's motion.

## BACKGROUND

A.   **Conviction, Sentence and Appeal.**

On September 20, 2007, Petitioner and codefendant Brenda Rickard were each convicted of one count of conspiracy to defraud the United States (in violation of 18 U.S.C. § 371) and seven counts of bank fraud (in violation of 18 U.S.C. § 1344). The convictions stemmed from Petitioner and Rickard's participation in a conspiracy to fraudulently obtain inflated mortgage loans from banks in connection with the purchase of eight residential properties in New Jersey.

1

See United States v. Davis, 336 Fed. Appx. 235 (3d Cir. 2009). As a result of this scheme, Petitioner and Rickard allegedly procured approximately $3.5 million and $2.25 million, respectively. Id. at 238-39. During the eleven day trial, the Government introduced ample evidence, including testimony from nine co-conspirators, that Petitioner and Rickard each performed distinct roles in the scheme: Petitioner identified target properties, recruited "straw" purchasers, and procured false documentation to support inflated loan amounts, while Rickard handled the closings, including preparing closing documents containing false information, and directed the distribution of the proceeds from the home sales. Id. at 239, 241.

On July 16, 2008, this Court sentenced Petitioner to a 151-month term of imprisonment and Rickard to a 121-month term of imprisonment. Id. at 238. Each defendant would thereafter be subjected to a five-year term of supervised release. Id. The Court also ordered that each defendant pay $12,487,227.51 in restitution. Id.

On July 21, 2008, Petitioner and Rickard each filed a notice of appeal with the United States Court of Appeals for the Third Circuit. On appeal, Petitioner argued that this Court committed five errors: 1) the District Court erred in failing to dismiss the jury venire; 2) the evidence was insufficient to sustain Petitioner's convictions; 3) the District Court erred in its instruction to the jury concerning materiality; 4) the Government failed to produce Jencks Act material; and 5) Petitioner's sentence was unreasonable. Id. at 241.

In affirming this Court's rulings, the Third Circuit held: (1) Petitioner failed to establish a prima facie violation of either the fair cross section requirement of the Sixth Amendment or the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., and thus was not entitled to either a new pool of potential jurors nor a hearing on the jury selection process used; (2) viewed in the light most favorable to the Government, the evidence was sufficient to allow a rational trier of

fact to conclude beyond a reasonable doubt that Petitioner acted with an intent to deceive the bank in order to obtain from it money or other property; (3) Petitioner's requested materiality instruction was an incorrect statement of the law, and the District Court did not err in denying its inclusion in the jury charge; (4) the government was not obligated to produce the transcript of a witnesses' prior interview as Jencks Act material because the transcript was not "in the possession" of the United States; (5) Petitioner's sentence was not substantively unreasonable. Id. at 242-45.

**B.    Petitioner's Section 2255 Claims.**

Petitioner now asks this Court to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255.  Petitioner, in her pro se brief submitted on September 28, 2010[1], asserts a claim of ineffective assistance of counsel under the Sixth Amendment against her attorney, Thomas H. Nooter, Esq.

In particular, Petitioner alleges that her attorney rendered ineffective assistance by failing to: (1) request a judgment of acquittal based upon the government's failure to prove that the victims' funds were FDIC-insured; (2) advise her of the ramifications of the sentencing guidelines and the possibility of mitigating her sentence by pleading guilty; (3) advise her of the correct interpretation of the law of "materiality" as a defense to bank fraud, thereby hindering her decision of proper defense options; (4) research and adequately understand the criteria for assessing loss amount, thereby prejudicing her pretrial options and sentencing by not properly mitigating the loss amounts; (5) research and know the restitution laws and relevant sentencing guideline commentary, thereby not properly objecting to an improper restitution order; (6)

---

[1] "Petitioner's Memorandum of Law and Supporting Appendix in Support of Motion to Correct, Vacate, and/or Set Aside Sentence and Conviction Pursuant to Title 28 U.S.C. Section 2255" will hereinafter be referred to as "Petitioner's brief" or "2255 motion brief".

3

thoroughly investigate discovery material, thereby prejudicing her defense; (7) interview and call witnesses, including experts, as she requested, which would have been helpful to her defense; and (8) timely raise valid issues in the appeal, thereby prejudicing the outcome of the appeal. Additionally, Petitioner claims a violation of due process and equal protection based upon outrageous government conduct. Lastly, on April 12, 2011, Petitioner filed an addendum to her 2255 motion brief, in which she claims that her sentence should be reduced based upon her post-sentencing rehabilitation.

## LEGAL STANDARD

**A.     Generally.**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Thus, Petitioner is entitled to relief only if she can demonstrate that she is in custody in violation of federal law or the Constitution.

A petitioner raising an issue regarding the effectiveness of his attorney must allege specific facts in support of his claim. "[B]ald assertions and conclusory allegations" are insufficient to support a claim and may be dismissed without a hearing. Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987), cert. denied, 484 U.S. 946 (1987). The petitioner must also allege what actions should have been taken and what favorable information would have been

produced or what favorable result would have been obtained. See Lewis v. Mazukiewicz, 915 F.2d 106, 115 (3d Cir. 1990).

In considering the instant 2255 motion, this Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). Moreover, this Court "must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).

**B.     Strickland Test.**

In order to sustain an ineffective assistance of counsel claim, Petitioner must establish: (1) deficient performance, and (2) resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 697 (1984). Under the first prong, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Even if Petitioner is able to demonstrate deficient performance by counsel, Petitioner must also, at prong two, show that counsel's unprofessional performance actually prejudiced his or her defense. Id. The prejudice prong is satisfied if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This Court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96. If a petitioner cannot demonstrate prejudice, however, then the court does not have to determine whether counsel's alleged errors were constitutionally deficient. See Id. at 697.

With this framework in mind, the Court now turns to the Petitioner's arguments.[2]

## DISCUSSION

Petitioner claims that habeas relief is warranted because her attorney, Thomas H. Nooter, Esq., failed to provide her with effective assistance of counsel; the government's conduct was outrageous; her post-sentencing rehabilitation merits sentence reduction. The Court has considered each of the arguments raised in support of this motion, and based on the reasons set forth below, finds that the relief requested is not warranted.

**A.   Ground One: Counsel's Alleged Ineffective Representation.**

1. Failure to Request Judgment of Acquittal Based Upon the Government's Failure to Prove That the Victim's Funds Were FDIC-Insured.

Petitioner first alleges that her counsel, Thomas A. Nooter, Esq., was ineffective because he failed to request a judgment of acquittal based upon the government's alleged failure to prove that the victim's funds were FDIC-insured. This claim is without merit because the government did in fact prove that that the funds were FDIC-insured. As a result, there was no reasonable basis for a motion for judgment of acquittal based on this argument. Because there was no reasonable basis for a motion, Petitioner cannot show that her counsel's performance was deficient or prejudicial to her case.

During the trial, a stipulation was agreed to by both parties which stated that the that the FDIC insurance certificates relating to Lehman Brothers and Commerce Bank North, produced and maintained by the FDIC, were "true and accurate." In his affidavit Mr. Nooter states that he agreed to the stipulated facts because it was "undeniably true" that the banks were federally

---

[2] In light of Petititioner's pro se status, the Court construes Petitioner's motion liberally. See generally Haines v. Kerner, 404 U.S. 519, 520 (1972).

insured. (See Certification of Thomas H. Nooter, Esq., ¶ 29.) Furthermore, the government elicited testimony at trial to further corroborate this fact. Carl Peterson, Vice-President for Credit Policy at Lehman Brothers, and Jeff Burley, Credit Officer for Commerce Bank North, both testified under oath that their bank accounts were insured by the FDIC.

It is beyond debate that the victim banks were insured by the FDIC. Petitioner therefore had no reasonable basis for filing a motion for judgment of acquittal for the government's alleged failure to prove this fact. Therefore Petitioner's counsel was not deficient for failing to filed this motion and so this element of Petitioner's complaint is dismissed.

> 2. Failure to Advise Petitioner of the Ramifications of the Sentencing Guidelines and the Possibility of Mitigating Her Sentence by Pleading Guilty.

Next, Petitioner claims that her counsel was ineffective due to his alleged failure to fully explain the ramifications of the sentencing guidelines used by this Court. This claim is belied by the record from this case as well as from past actions involving Petitioner.

The government in this case offered Petitioner a plea agreement in 2005. In his affidavit, Mr. Nooter swears that he fully discussed the relevant provisions of the sentencing guidelines; how the amount of the loss would affect the base level offense; and how the Court would make a final determination of the loss amount. (See Certification of Thomas H. Nooter, Esq., ¶ 4.) Mr. Nooter states that after these discussions Petitioner made the decision not to accept the plea agreement extended in 2005 and that she wanted to try the case. (Id. at ¶ 6.) Additionally, after meeting with the government in February 2006, Mr. Nooter was once again informed by the government that they would be willing to extend a plea agreement. Petitioner, however, rejected the idea of accepting a plea bargain or of pleading guilty to anything. (Id. at ¶ 9.)

In addition to the affidavit of Mr. Nooter in this case, this Court notes that Petitioner was previously convicted of conspiracy to commit bank and wire fraud in the Eastern District of New

York in 2001, after having entered a plea pursuant to an agreement with the government. (See Davis PSR at ¶¶ 115-117.)  Mr. Nooter states that he explained the sentencing guidelines to Petitioner in that case as well. (See Certification of Thomas H. Nooter, Esq., ¶ 5.)  Furthermore, Petitioner was indicted in connection with yet another fraud scheme in the Central District of California in 2004. (See Davis PSR at ¶¶ 129-32.)  According to Mr. Nooter, their defense in that case consisted of a very detailed challenge to the loss amount the government had computed, and Mr. Nooter states that he and Petitioner worked together in preparing that defense. (See Certification of Thomas H. Nooter, Esq., ¶ 5.)  This implies that Petitioner was fully briefed on the sentencing guidelines since loss amount factors directly into the sentencing range for bank fraud.

It is clear that Petitioner understood the federal sentencing guidelines and so this portion of her complaint must be dismissed.  Mr. Nooter's sworn affidavit alone is proof that there was no alleged failure to explain the sentencing guidelines and the possibility of pleading guilty.  The prior actions from New York and California only further bolster this Court's confidence in dismissing this portion of Petitioner's complaint.  Furthermore, Petitioner only offers bald assertions and conclusory allegations that Mr. Nooter did not explain the federal sentencing guidelines, which is insufficient in this Circuit under the standard set forth in Mayberry.  Therefore, this element is properly dismissed.

   3. Failure to Advise Petitioner of the Correct Interpretation of the Law of "Materiality" as a Defense to Bank Fraud.

Third, Petitioner alleges that her counsel was ineffective because he failed to advise Petitioner of the correct interpretation of the law of materiality as it relates to a possible defense for bank fraud.  However, Petitioner cannot show that the result of her trial would have been different "but for" this allege deficiency.  Thus, the prejudice prong of Strickland is not satisfied.

Mr. Nooter concedes that he considered incorporating materiality of misrepresentation into his defense, but asserts that this was never the focal point of the defense strategy overall.[3] Instead, Mr. Nooter thought if he could show that Aurora Loan Services (a subsidiary of Lehman) had disregarded the information contained in the loan applications (the "Al Rodd" documents) he could prove that the false statements were not material. However, the correct standard applied by this court was not how the actual banker handled the information, but how a reasonable banker would handle the same or similar information.

Notwithstanding Mr. Nooter's misapplication of the standard regarding the Al Rodd documents, Petitioner's motion still fails because the Al Rodd documents were not the only falsified documents presented by the government at trial. Indeed, the more important documents the government presented were the conflicting "HUD" statements, which listed different sets of falsified information, one for the sellers and one for the lenders. Mr. Nooter asserts, and this Court agrees, that there was no way to argue these were not material. (See Certification of Thomas H. Nooter, Esq., ¶ 12.)

For this reason, Petitioner fails the Strickland test. Although Nooter's approach to the Al Rodd documents may have been deficient, the existence of the HUD documents shows that the result would not have been different for Petitioner. This element is therefore dismissed.

4.   Failure to Research and Adequately Understand the Criteria for Assessing Loss Amount.

Petitioner further claims that her counsel was ineffective because he allegedly failed to research and adequately understand the criteria for assessing loss amount as it relates to bank fraud. Petitioner contends that had Mr. Nooter "properly challenged the Probation Officer's loss

---

[3] As proven by Mr. Nooter's opening and closing arguments, the central theme of the defense was that Petitioner lacked the requisite intent to defraud the banks, not materiality.

9

amount figures according to law, Petitioner's loss amount could have been reduced drastically causing her offense level to be reduced, granting her a substantially lower sentencing guideline range and ultimately a lower sentence." (Petitioner's Br. at 54.)  Petitioner further claims that had she been fully informed of the law regarding loss, she would have accepted a plea agreement. (Id.)

This claim is completely belied by Mr. Nooter's affidavit.  Mr. Nooter states that during the time between the jury verdict and the sentencing he was diligently researching the law relating to loss and found the law in the Third Circuit to be unfavorable towards the "fair market value" approach that Petitioner now claims should have been raised.  As a result, Mr. Nooter did not make the "fair market value" approach the main thrust of his sentencing argument.  Instead, Mr. Nooter focused the challenge on U.S.S.G. § 2B1.1(b)(12)(A) ("million dollar enhancement") and argued that the loss figure the Court should use was less than $1 million because of offsets due to payments made by Petitioner and her partners in improving the properties and payments on the mortgages.

Moreover, Mr. Nooter states that to even get the base offense level down to the next lower level under U.S.S.G. § 2B1.1(b)(1)(K), the loss amount had to compute to less than $7,000,000 – one-half of what the government had computed as the loss.  It is unlikely that Petitioner could have conclusively proven that the government's assessment of loss amount was objectively wrong by over 50%.  Given all of the variables associated with determining "fair market value," Petitioner cannot prove that "but for" the allegedly improper loss determination she would have been given a lower sentence as required by Strickland.

Furthermore, there is no evidence that the Third Circuit would have adopted the "fair market value" reasoning adopted by the Fifth Circuit.  Although Mr. Nooter agrees that it would

10

have been better if he raised the "fair market value" argument in the original opening brief at the Appellate level instead of in his reply brief, given the uncertainty of the standard used by the Third Circuit, this Court cannot conclude that Mr. Nooter's conduct was deficient within the meaning of the law. This element of Petitioner's complaint is therefore dismissed.

     5.     <u>Failure to Research and Know the Restitution Laws and Relevant Sentencing Guideline Commentary.</u>

Additionally Petitioner alleges that her counsel was ineffective in that he failed to research and know the restitution laws and relevant sentencing guideline commentary. Specifically, Petitioner claims that Mr. Nooter was deficient in not objecting to the Probation Department's decision to name Chicago Title Company ("CTC") as the victim in the loss calculation. This claim is without merit.

As the relevant statute, 18 U.S.C.S. § 3663A, explicitly states, restitution is given to someone "directly and proximately" harmed by the defendant's conduct. Mr. Nooter believes, and Petitioner offers no evidence to the contrary, that the losses were paid out by CTC. Because CTC paid the losses borne by the banks, they were properly entitled to the restitution.

Section 3663A makes clear that restitution be paid to a victim of the offense directly harmed by the defendant's criminal conduct in the course of the scheme. Petitioner offers no facts to show that CTC was not a victim and so this Court has no reason not to believe that CTC was such a victim and that restitution to them was proper. This portion of Petitioner's motion is thus properly dismissed.

     6.     <u>Failure to Thoroughly Investigate Discovery Material.</u>

Petitioner claims that her counsel was ineffective because he allegedly failed to thoroughly investigate discovery material. Specifically, Petitioner alleges that Mr. Nooter failed to notice a document written by FBI Agent Sean McCarthy in response to numerous complaints

11

Petitioner had made against Agent McCarthy. (See Petitioner's Br. at 60.)  Petitioner contends that the document written by Agent McCarthy was full of "lies and inconsistencies" which showed that Agent McCarthy was "persecuting" Petitioner. (Id.)  Mr. Nooter states, however, that he did not "miss" this document but instead made a "considered and deliberate decision" not to "go to war" with agent McCarthy as part of the trial defense.  Mr. Nooter states that he made a "strategic decision" that going after an FBI agent would "not play well with the jury, was not necessary, and would probably open the door to other potential 'bad act' evidence … which would prove to be far more detrimental than beneficial" to Petitioner's defense. (See Certification of Thomas H. Nooter, Esq., ¶¶ 15-17.)  Mr. Nooter further states that Petitioner concurred with this analysis when discussing trial strategy. (Id.)

Under Strickland, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, at 688.  The ABA Standards for Criminal Justice recognize as being among the non-fundamental issues reserved for counsel's judgment "whether and how to conduct cross-examinations, what jurors to accept or strike, [and] what trial motions should be made...." Gov't of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1434 (3d Cir. 1996) (citing ABA Standards § 4-5.2(b)).

This Court agrees that deciding not to attack the FBI can be considered sound trial strategy.  This element of Petitioner's motion is therefore dismissed.

7.  Failure to Interview and Call Witnesses, Including Experts, as Requested by Petitioner.

For her seventh claim, Petitioner alleges that her counsel was ineffective because he failed to interview and call witnesses as requested by Petitioner.

The authority to make decisions regarding the conduct of the defense in a criminal case is split between criminal defendants and their attorneys. Government of the Virgin Islands v.

12

Weatherex, 77 F.3d 1425, 1433 (3d Cir.), cert. denied, 519 U.S. 1020 (1996). A defendant has the ultimate authority to make certain fundamental decisions regarding the case, including the decisions whether to plead guilty, to waive the right to trial by jury, or to the right to counsel. Id. (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). Non-fundamental decisions are to be made by counsel on the basis of his or her professional judgment exercised after consultation with the client. Weatherex, 77 F.3d at 1433; Jones v. Barnes, 436 U.S. at 753 n.6.  Numerous courts, including the Third Circuit, have recognized witness selection as being among the non-fundamental decisions that counsel is entitled to make at trial. See Weatherex, 77 F.3d at 1434.

Mr. Nooter states that he made a decision not to call an expert for three reasons.  First, the expert that was suggested was reluctant to testify.  Second, Mr. Nooter made the determination that an expert would not be necessary to make the points he wanted to make. Third, Mr. Nooter determined that calling an expert also would open Petitioner up to substantial risk which would have been fatal to her case.  He therefore determined that calling the suggested expert was not in Petitioner's best interest. (See Certification of Thomas H. Nooter, Esq., ¶¶ 18, 19.)  Mr. Nooter also determined that the other non-expert witnesses that Petitioner wanted to call were not as favorable to Petitioner's case as she believed.  Mr. Nooter ultimately "conclude[d] that making reference to their roles through cross-examination entailed far less risk of an unpleasant cross-examination of them which would have occurred had I called them as defense witnesses." (Id. at ¶ 20.)

Because the decision to call witnesses is a non-fundamental decision reserved for counsel, this Court finds no grounds to hold Mr. Nooter's decision not to call certain witnesses deficient. This element of Petitioner's claim is dismissed.

13

       8.       <u>Failure to Timely Raise Valid Issues in the Appeal.</u>

Petitioner alleges that her Counsel was ineffective because he failed to timely raise valid issues on appeal. Petitioner asserts that Mr. Nooter's failure to raise the "fair market value" standard regarding loss in his opening appellate brief caused her substantial prejudice, specifically that Mr. Nooter's deficiency was the reason why her sentence was upheld. By waiting for the reply to bring up the argument, the Appellate Court refused to rule on the issue, instead saying that the reply brief was too late to raise the issue. Petitioner claims that if Mr. Nooter had raised the issue in his preliminary brief, the Appellate Court would have been able to rule on the issue. Petitioner further asserts that the Appellate Court would have adopted the "fair market value" standard and that this would have significantly changed the loss amount and directly affected her sentencing level.

This argument fails because it is too speculative. Even considering, <u>arguendo</u>, that Mr. Nooter was deficient in waiting until the reply brief to raise the "fair market value" argument, Petitioner cannot conclusively prove that Mr. Nooter's deficiency actually prejudiced Petitioner, as required under <u>Strickland</u>. The prejudice prong is only satisfied if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

Mr. Nooter's failure to initially raise the "fair market value" argument is not sufficient to undermine this Court's confidence in the outcome. First, the Appellate Court would have had to expressly adopt the "fair market value" standard as the proper standard. Second, the Appellate Court would then have to apply the "fair market value" test and find that the government's $14 million loss estimate was wrong by $7 million. This Court cannot say that "but for" Mr.

14

Nooter's failure to initially raise the "fair market value" argument in his initial brief, the Appellate Court would have found that the loss was substantially lower to put Petitioner in a lower sentencing range. This claim is therefore dismissed.

**B.     Ground Two: Outrageous Conduct by the Government.**

Petitioner next argues that FBI agent Sean McCarthy had a personal vendetta against her and that the resulting conduct was "so outrageous and shocking that it obstructed [Petitioner's] defense and prejudiced her case, making the prosecution of Petitioner's case fundamentally unfair and therefore violating due process." (Petitioner's Br. at 81.)

Among other things, Petitioner alleges that McCarthy lied to his superiors so that he could remain on her case; that he provided state agencies with false information about Petitioner; that he provided fraudulent information to a fellow detective in order to obtain an otherwise illegal search warrant; that he stole "critical documentation" that was needed for her defense at trial; that he intimidated a business partner hired by Petitioner so that the loss could be maximized. (Id.)

Petitioner must meet an extremely high standard since it is "clear that this is an extraordinary defense reserved for only the most egregious circumstances." Nolan-Cooper, 155 F.3d at 230-31 (quoting United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992)).  Relief is only available if the "challenged conduct [is] shocking, outrageous, and clearly intolerable." Id. The only case to favorably consider the outrageousness defense was United States v. Twigg, 588 F.2d 373 (3d Cir. 1978), where the Third Circuit reversed the conviction for outrageousness. Moreover, this Circuit has subsequently construed Twigg very narrowly: "[w]hile continuing to recognize, in theory, the outrageousness defense, we have nonetheless observed that, because of the extraordinary nature of the doctrine, the judiciary has been 'extremely hesitant' to uphold

15

claims that law enforcement conduct violates the Due Process clause." <u>Nolan-Cooper</u>, 155 F.3d at 230 (citing <u>United States v. Voight</u>, 89 F.3d 1050, 1065 (3d Cir. 1996); <u>United States v. Jannotti</u>, 673 F.2d 578, 608 (3d Cir. 1982) (en banc)).

Petitioner fails to meet this very tough standard. Even if Petitioner's allegations are taken as true, the record clearly shows that Petitioner orchestrated the criminal conduct and that her conviction was not the result of government agents acting in a manner that can be considered "shocking, outrageous, and clearly intolerable." This element of her motion is dismissed.

**C.      Ground Three: Post-Sentencing Rehabilitation.**

Lastly, Petitioner makes a request for a sentence reduction on the grounds that she is reforming herself and helping others in their lives. 18 U.S.C. § 3582(c)(1)(A) is controlling and the statute clearly states that the only grounds for modifying a term of imprisonment once it has been imposed must be initially be based on a motion from either the government or the director of the Bureau of Prisons. Although the Court commends Petitioner on her strides towards rehabilitation, because no such motion has been made, it is not within this Court's power to modify the term of imprisonment. This element is therefore dismissed.

## CONCLUSION

Based on the reasons set forth above, Petitioner's motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 is denied without evidentiary hearing. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

An appropriate Order accompanies this Opinion.


DATED: November 28, 2011

                                        /s/ Jose L. Linares
                                        JOSE L. LINARES, U.S.D.J.